**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| GCI Outdoor, Inc., | Civil Action No.: 1:20-cv-00367-PLM-PJG |
| Plaintiff, | |
| v. | Hon. Paul L. Maloney |
| Wholesale Merchandisers LLC, and Zhejiang Pride Leisure Product, | |
| Defendants. | |

**DEFENDANT'S MARKMAN BRIEF**

## TABLE OF CONTENTS


I. Introduction ..... 1
II. Summary of Markman Issues ..... 1
A. Stipulated Claim Construction ..... 1
B. Proposed Claim Construction ..... 1
C. Identification of any Terms of Art ..... 2
D. Person of Ordinary Skill In the Art ..... 2
E. Evidence, Authorities, and Arguments Supporting Position ..... 2
F. Summary Judgment ..... 2
G. Identification of Extrinsic Evidence ..... 2
III. Claim Construction ..... 2
A. Legal Principles ..... 2
B. Rules for Claim Construction ..... 4
C. The '611 Patent ..... 6
D. Claim Construction of the '611 Patent ..... 6
1. First Term: "frame side assemblies" ..... 6
2. Second Term: "associated with" ..... 10
IV. Conclusion ..... 14

# INDEX OF AUTHORITIES

Cases

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A*
657 F.3d 1264 (Fed. Cir. 2011)........................................................................................ 5
*Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*
262 F.3d 1258 (Fed. Cir. 2001)........................................................................................ 5
*Brown v. 3M*
265 F. 3d 1349 (Fed. Cir. 2001)........................................................................................ 3
*Digital Biometrics, Inc. v. Identix, Inc.*
149 F.3d. 1335 (Fed. Cir. 1998)........................................................................................ 3
*Function Media, L.L.C. v. Google, Inc.*
708 F.3d 1310 (Fed. Cir. 2013)........................................................................................ 4
*Irdeto Access, Inc. v. Echostar Satellite Corp*.
383 F.3d 1295 (Fed. Cir. 2004)........................................................................................ 5
*Markman v. Westview Instruments, Inc.*
517 U.S. 370 (1996).................................................................................................. 2, 3, 5
*Novartis Pharms. Corp. v. Abbott Labs.*
375 F.3d 1328 (Fed. Cir. 2004)........................................................................................ 5
*Phillips v. AWH Corp.*
415 F.3d 1303 (2005) (en banc)................................................................................ 3, 4, 5
*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999)........................................................................................ 6
*Rexnord Corp. v. Laitram Corp.*
274 F.3d 1336 (Fed. Cir. 2001)........................................................................................ 5
*Thorner v. Sony Computer Entm't Am. LLC*
669 F.3d 1362 (Fed. Cir. 2012)........................................................................................ 4
*Transmatic, Inc. v. Gulton Indus.*
53 F.3d. 1270 (Fed. Cir. 1995)..................................................................................... 3, 4
*Vitronics Corp. v. Conceptronic, Inc.*
90 F.3d. 1576 (Fed. Cir. 1996)................................................................................. 3, 4, 5
Weiner v. NEC Electronics, Inc.
102 F.3d. 534 (Fed. Cir. 1997)........................................................................................ 4

# I. INTRODUCTION

Plaintiff GCI Outdoor, Inc. ("GCI") has sued Defendants Wholesale Merchandisers LLC ("Wholesale") and Zhejiang Pride Leisure Product ("Zhejiang") (collectively "Defendants") for infringement of U.S. Patent No. 9,060,611 ("the '611 Patent") based on the Glide Zone Rocker Chair ("Accused Product") manufactured by Zhejiang and sold by Wholesale. The '611 Patent is directed to a collapsible director-style camping chair that features a rocking mechanism and folds laterally.

GCI claims Defendants have infringed claims 1-5, 8, 10-11, 13-17, and 19 of the '611 Patent. Four claim terms of the '611 Patent are disputed and require construction by the Court. Two of the disputed claim terms were identified by Plaintiff and two by Defendants. The parties have agreed to provide proposed constructions for the claim terms they identified in their opening briefs, and will provide constructions for the terms identified by the opposing party in their responsive brief. ECF No. 41, PageID.447.

# II. SUMMARY OF MARKMAN ISSUES

## A. STIPULATED CLAIM CONSTRUCTION

The Parties have agreed on construction of the following term:

| Claim | Term | Stipulated Construction |
|---|---|---|
| 10 | "for supported a seated user" | "for supporting a seated user" |

## B. PROPOSED CLAIM CONSTRUCTION

Defendants propose the following construction for each disputed term:

| Claims | Term | Defendants' Proposed Construction |
|---|---|---|
| 4, 15, 17 | "associated with" | "connected directly to or forming a physical part of" |
| 1-5, 8, 11, 13-14, 16-17, 19 | "frame side assembly" | "the generally vertical side frame members defined by items 22, 24, 26, 28, and 30" |

### C. IDENTIFICATION OF ANY TERMS OF ART

Defendants submit that there are no terms of art, technical terms, or terms used contrary to their normal usage in everyday language.

### D. PERSON OF ORDINARY SKILL IN THE ART

Defendants submit that the level of ordinary skill in the art for the subject matter is relatively low for knowledge sufficient to understand the claims, products, and terms at issue. A person of ordinary skill in the art would be a product manager who is experienced in procuring, designing, and/or manufacturing foldable chairs with 1-2 years of experience.

### E. EVIDENCE, AUTHORITIES, AND ARGUMENTS SUPPORTING POSITION

Citations to the evidence, authorities, and arguments supporting Defendants' position on each disputed claim construction issue are included in the argument below.

### F. SUMMARY JUDGMENT

Defendants submit that the disputed claim construction issues can be resolved on summary judgment without the taking of evidence.

### G. IDENTIFICATION OF EXTRINSIC EVIDENCE

Defendants do not believe any extrinsic evidence is necessary to resolve the disputed claim construction issues other than reference to a common dictionary, and do not intend to offer any extrinsic evidence or expert witness testimony at a hearing related to the claim construction issues.

## III. CLAIM CONSTRUCTION

### A. LEGAL PRINCIPLES

This Court is required to construe disputed patent terms in the '611 Patent claims pursuant to the principles set forth in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) . In all patent infringement cases, the Court must interpret the language used in the patent

claims and determine what the claims mean as a matter of law. *Id.* To interpret the meaning of a patent claim, the Court must first look to the "intrinsic evidence" of the patent in suit. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d. 1576, 1581-85 (Fed. Cir. 1996). Specifically, the Court must look to the claim language, the patent specification, and the patent's prosecution history, all in that order. *Vitronics*, 90 F.3d. at 1582.

In evaluating the "intrinsic evidence," the Court should look to the actual words of the claims. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d. 1335, 1344 (Fed. Cir. 1998); *Vitronics*, 90 F.3d. at 1582. The Court should give the words of the asserted claims their common and ordinary meaning, unless the specification, prosecution history, or other patent claims indicate that the inventor intended otherwise. *Vitronics*, 90 F.3d. at 1582; *Transmatic, Inc. v. Gulton Indus.*, 53 F.3d. 1270 (Fed. Cir. 1995).

In its *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (2005) (en banc), the Federal Circuit Court of Appeals clarified the methodology for claim construction. It stressed that it is the patent specification, rather than dictionary definitions, that is the primary tool for interpreting patent claims. *Id.* The *Phillips* Court strongly criticized the weight given to dictionary definitions by courts in prior decisions. The Court opined that too much reliance was placed on extrinsic sources, such as dictionaries, treatises, and encyclopedias, and too little reliance was placed on intrinsic sources, and, in particular, the specification and prosecution history of the patent. *Id.* at 1319, 1324. The Court reaffirmed that the proper place to begin any claim construction analysis is with the claim language.

In some cases, the ordinary meaning of claim language may be little more than the widely accepted meaning of commonly understood words, in which case a general purpose dictionary may be helpful. *Brown v. 3M*, 265 F. 3d 1349 (Fed. Cir. 2001). But, according to the *Phillips*

Court, one should rely heavily and primarily on the patent specification for guidance on the meaning of claims. *Id.*

### B. RULES FOR CLAIM CONSTRUCTION

Thus, a proper claim construction is as follows:

**Step 1**: Look at the words of the claims and give the words their common and ordinary meaning, unless the specification, prosecution history, or other patent claims indicate that the inventor intended otherwise. In determining the ordinary meaning of particular words in a patent claim, the Court should construe the words according to the standard of what the words would have meant to a person of ordinary skill in the art as of the date the patent application was filed. *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1320 (Fed. Cir. 2013), citing *Phillips*, 415 F.3d at 1312-13; *Vitronics*, 90 F.3d. at 1582; *Transmatic*, 53 F.3d. at 1277; *Weiner v. NEC Electronics, Inc.*, 102 F.3d. 534, 538 (Fed. Cir. 1997); 35 U.S.C. § 112. The presumption in favor of the plain meaning of a claim term can be overcome: (1) where the patentee has acted as his own lexicographer by setting forth an explicit definition of the term; or (2) where the term used by the patentee so deprives the claim of clarity that there is no means by which the scope of the claim may be determined from the language used. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)*, citing Vitronics,* 90 F.3d at 1580.

**Step 2:** Once the Court determines the plain meaning of a disputed claim term, the second – and necessary – step in the claim interpretation process is to review the patent specification to identify how the inventors themselves used the words of the claims to describe their invention. *Vitronics*, 90 F.3d. at 1582. The Court must examine the written description and drawings of the patent to determine whether the term has been used in a manner which is consistent with its ordinary meaning. *Id.* The Federal Circuit has termed the specification "the single best guide to the meaning of a disputed [claim] term." *Phillips v. AWH Corp.*, 415 F.3d at

1321 (citing *Vitronics*, 90 F.3d at 1582; *Irdeto Access, Inc. v. Echostar Satellite Corp*., 383 F.3d 1295, 1300 (Fed. Cir. 2004) ("Even when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents.") (citations omitted); *Novartis Pharms. Corp. v. Abbott Labs.,* 375 F.3d 1328, 1334-35 (Fed. Cir. 2004) (same)*; Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) ("[A] claim term may be clearly redefined without an explicit statement of redefinition.")).

**Step 3.** As a third step, the Court may consider the prosecution history of the patent. *Vitronics*, 90 F.3d. at 1582. "After examining the written description and the drawings, the same confirmatory measure must be taken with the prosecution history, since statements made during the prosecution of a patent may affect the scope of the invention." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1343 (Fed. Cir. 2001). The prosecution history may be used "to understand the language used in the claims." *Markman*, 52 F.3d. 980. The prosecution history is relevant because it may contain contemporaneous statements by the inventors about what the claims mean. *Vitronics,* 90 F.3d. at 1582-83. However, the prosecution history, "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir. 2011), *citing Phillips,* 415 F.3d at 1317.

In most cases, the intrinsic evidence clearly reveals the proper interpretation of disputed claim language. *Vitronics*, 90 F.3d. at 1583. If the meaning of claim limitations is apparent from an examination of the above intrinsic evidence, than the claim has been construed and the Court should stop its analysis there. *Id.* After analyzing the intrinsic evidence it is the rare case in which a claim is still ambiguous; however, if further definition is required, the Court may look to

extrinsic evidence to help define the claim. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999).

## C. THE '611 PATENT

The technical problem the '611 Patent says that it solves is relatively simple: traditional collapsible furniture designs compromise on user comfort, and the patented invention is a comfortable, collapsible, portable rocking chair. ***Exhibit A***, '*611 Patent, Col. 1, lines 39-41.* The patented chair design includes left and right side frame assemblies, a seat panel, and a backrest panel. The side frame assemblies rest on a fulcrum point to permit rocking movement of the chair frame. Each fulcrum point rests on a support runner having a foot at either end of it that sits on the floor, A rocker mechanism connects to an upper rear portion of each side frame assembly and to the support runner.

The application resulting in the '611 Patent was filed October 7, 2013, and the patent issued on June 23, 2015. The sole office action during prosecution of the '611 Patent was an *Ex Parte Quayle* action directed to formality issues and did not include any substantive claim rejections or objections. The Applicant responded to the action on February 11, 2015, making minor amendments to the specification and claims to resolve the formality issues.

## D. CLAIM CONSTRUCTION OF THE '611 PATENT

### 1. First Term: "frame side assemblies"

The first term requiring this Court's construction is "frame side assemblies." This term is found in asserted claims 1, 2, 5, 11, 13-14, and 17.

In the Background of the Invention section of the '611 Patent, "frame side assemblies" are described as existing in the prior art and consisting of vertical front leg and rear leg members, a chair back support member, and a seat support member.

> Beach and lawn chairs adapted to be folded for transportation and/or storage typically have a frame fabricated from elongated structural members, preferably metal. The frames of such chairs have transversely spaced-apart left-hand and right-hand **frame side assemblies** that are substantially parallel to each other. In a set-up condition, each **frame side assembly** has a front leg member extending in a generally vertically upward direction and a rear leg member pivotally connected at its upper end directly or indirectly to an upper end of the front leg member and which is rearwardly and downwardly inclined from the upper end of the front leg member. Such **frame side assemblies** also include an upwardly extending chair back support member which is pivotally connected at its lower end to the rear leg member intermediate the ends of the rear leg member by an over-the-center linkage that positions the back support member so that it is supported at its lower end on the rear leg member and inclined upwardly and rearwardly therefrom when the chair is unfolded from its closed or flatly folded storage condition to its open or set-up condition for use. Such **frame side assemblies** also include a seat support member generally supported by the front and rear leg members in a generally horizontal condition when the chair is in its set-up condition.

*'611 Patent, Col. 1, lines 43-65.*

The Background goes on to identify that "Conventional beach and lawn chairs of the prior art having the left-hand and right-hand **frame side assemblies** such as hereinbefore generally described also commonly have transversely extending rigid connecting members providing fixed connection between the front leg members, the rear leg members, and often the back support members as well." *'611 Patent, Col. 1, line 66-Col. 2, 4.*

In the Summary of the Invention of the '611 Patent, the term "frame side assemblies" is used, but includes no description beyond a recitation of the claim language. The Detailed Description identifies that the frame side assemblies are generally referred to as reference numeral 20, with 20L referring to the left hand side assembly and 20R referring to the right hand side assembly.

Referring to FIGS. 2-5, the frame 12 has a pair of **side assemblies 20** comprised of frame members and having substantially identical, but mirrored, construction. **The left and right frame side assemblies, respectively designated as 20L and 20R** in FIGS. 4 and 5, are disposed in laterally or transversely spaced apart and generally parallel relation to each other when the chair 10 is in its set-up condition.

*'611 Patent, Col. 6, lines 8-10*

Side frame assemblies (20R and 20L) are shown in a yellow color.




**FIG. 2 (ANNOTATED)**




**FIG. 3 (ANNOTATED)**

The left and right **frame side assemblies, respectively designated as 20L and 20R** in FIGS. 4 and 5, are disposed in laterally or transversely spaced apart and generally parallel relation to each other when the chair 10 is in its set-up condition."

*'611 Patent, Col. 6, lines 10-14*




FIG. 4

The Detailed Description further identifies that "frame 12" is the chair frame as a whole, but the "frame side assembly" (20) is a subset of components, including the front leg 24, lower portion 26, rear leg 28, arm rest 22, and backrest support member 30.

> [A]s shown in FIG. 3, **the frame side assembly 20** includes a generally closed frame loop constructed from axially-elongated tubular material that is bent to define an armrest portion 22, a front leg portion 24, a lower support portion 26, and a rear leg portion 28. As shown, the frame loop extends upwardly from the rear leg portion 28 to define a backrest support member 30 rigidly attached to the closed frame loop. '611 Patent, Col. 6, lines 24-32.

By way of distinguishing the frame side assembly 20 from other components of the chair frame 12, the rocker mechanism 32 and support runner 34 are introduced later as components that connect to the frame side assembly 20 (also referred to in the specification as a "frame loop," the "loop" being the front, rear, bottom and arm rest components):

> Referring to FIGS. 2 and 6, **a rocker mechanism 32 is attached to the rear of the frame loop**. As shown, the rocker mechanism 32 extends angularly outwardly and downwardly from the backside of the frame loop—generally at the location where the armrest portion 22, the rear leg portion 28, and the backrest support member 30 are connected together—to a support runner 34 for supporting and facilitating a back-and-forth rocking movement of the chair 10 when a seated user wants to rock. In the embodiment illustrated in FIG. 2, **the support runner 34 also supports the lower support portion 26 of the frame side assembly 20** and is generally disposed beneath the rear leg portion 28 of the frame loop. '611 Patent, Col. 6, lines 56-68

Therefore, the term "side frame assembly" (as referred to by reference numerals 20, 20R, 20L) should be construed as the "generally vertical side frame members defined by items 22, 24, 26, 28, and 30." The side frame assembly 20 should be construed as to **not** include the rocker mechanism 32, support runner 34, or cross members 56.

**2. Second Term: "associated with"**

The second term that requires this Court's construction is "associated with." This term is found in asserted claims 5, 14, and 17.

- "fulcrum point **associated with** each side frame assembly" (claim 5, 17)
- "first foot **associated with** the front leg portion" (claim 14)
- "second foot **associated with** the rear leg portion" (claim 14)
- "third foot **associated with** the fulcrum point" (claim 14)

"Associated with" appears in the Background of the Invention, but only in reference to unrelated items, describing that it is an object of the invention to solve problems "associated with" the prior art. *'611 Patent, Col. 2, line 66 – Col. 3, line 5*. In the Summary of the Invention of the '611 Patent, the term "associated with" is used, but includes no description beyond a recitation of the claim language.

The Detailed Description mentions "associated with" in passing:

> The present invention is easily adaptable for use with chair frame designs that are collapsed in different manners, including but not limited to front-to-back folding generally **associated with** standard folding chairs. *'611 Patent, Col. 6, lines 18-21.*
>
> Still further, the frame side assembly 20 may be constructed from an open design instead of a closed frame loop, including the set-up of a front and rear leg generally **associated with** standard folding chair designs. *'611 Patent, Col. 6, lines 48-51.*
>
> Here, the chair frame 112 utilizes an open frame construction generally **associated with** standard folding chairs. . *'611 Patent, Col. 11, lines 36-38.*
>
> Referring again to the design illustrated in FIG. 2, when the chair 10 is folded up for transportation and/or storage, the user simply presses inwardly on each side of the frame 12, which causes the cross-members 56 to pivot relative to each other about their front and back pivot connections 66 and 64 from the X-shape **associated with** the set-up condition of the chair 10 to positions whereby the

> cross-members 56 are generally parallelly disposed relative to each other, as shown in FIG. 7. . *'611 Patent, Col. 12, lines 28-36.*

These passing references are of no assistance in interpreting the scope of the claims. Nowhere in the specification is "associated with" used with the parts identified in the claims. However, we do find language in the specification describing the relationship between the "associated" parts as follows.

| **"fulcrum point associated with each side frame assembly" (claim 5, 17)** | |
|---|---|
| "For example, as illustrated in the embodiment of FIG. 2, the frame assemblies 20L and 20R are formed by a closed frame loop **<u>mounted on</u>** a fulcrum point 54 **<u>of</u>** a support runner 34."<br><br>*'611 Patent, Col. 11, lines 1-4.* | <br><br>**FIG. 3 (ANNOTATED)** |

"Again referring to FIG. 6, a fulcrum 54 is provided **on** the forward end of the support runner 34 and is pivotally **connected to** the lower support portion 26 of the frame loop for effecting a pivoting of the frame loop relative to the support runner 34."

*'611 Patent, Col. 7, lines 65 - Col. 8, line 2.*




**FIG. 6 (ANNOTATED)**

**"first foot associated with the front leg portion" (claim 14)**

"As illustrated in FIG. 3, a first foot 36 a is **provided on** a forward portion of the frame side assembly 20, generally beneath the front leg portion 24 of the frame loop."

*'611 Patent, Col. 7, lines 20-22.*

Referring to FIG. 3, the rocking chair 10 is provided with three feet 36 **on** each frame side assembly 20, acting as contact points between the chair 10 and the ground or support surface on which the chair is placed for use."

*'611 Patent, Col. 7, lines 7-10.*




**FIG. 3 (ANNOTATED)**

<table>
<tr>
<td>"second foot associated with the rear leg portion" (claim 14)<br>"third foot associated with the fulcrum point" (claim 14)<br><br>"Second and third feet 36 b and 36 c are <u>provided at</u> respective ends of the support runner 34."<br><br>'611 Patent, Col. 7, lines 22-24.<br><br>Referring to FIG. 3, the rocking chair 10 is provided with three feet 36 <u>on</u> each frame side assembly 20, acting as contact points between the chair 10 and the ground or support surface on which the chair is placed for use."<br><br>'611 Patent, Col. 7, lines 7-10.</td>
<td><br>FIG. 3 (ANNOTATED)</td>
</tr>
</table>

The fulcrum point (54), first foot (36a), second foot (36b), and third foot (36c) are all shown as part of their "associated" member. The patent's use of "associated with" is inconsistent at best. First foot 36a is described and shown in the specification as being "provided on" a forward portion of the frame side assembly. *'611 Patent, Col. 7, lines 20-22.* The specification also teaches that the second and third feet are both "provided at respective ends of the support runner 34" and also "on each side frame assembly 20." *'611 Patent, Col. 7, lines 22-24; '611 Patent, Col. 7, lines 7-10.* The drawings clearly show that the second and third feet are on the ends of the support runner and not on, attached to, or in contact with any portion of the side frame assembly 20. *See, Figs. 3 and 6.*[1]

Despite the fact that "associated with" does not appear anywhere in the patent specification used with any of the disputed claim terms of "frame side assembly," "rocker

---

[1] Defendants expressly reserve the right to challenge the '611 patent as invalid under 35 U.S.C. § 112 on at least grounds of indefiniteness and lack of written description (in addition to Defendants' asserted grounds of invalidity under prior art as well).

mechanism," or "sleeve," the patent's specification provides some clear guidance about the kind of relationship contemplated by the term "associated with" – it is something clearly mounted to, provided on, or a physical part of. On the contrary, "associated with" clearly does not mean "part of another component of the chair." It would be wholly inconsistent with language usage as well as the description of the physical interrelationship of the parts of the chair described in the '611 patent to have a component "associated with" a different piece of the chair assembly than what the component is "provided on" or a "part of."

This use in the patent's specification is consistent with the general usage of the term "associated" in the English language. For example, the dictionary definition of "associated" is "related, connected, or combined together." https://www.merriam-webster.com/dictionary/associated. The specification shows that the "associated with" language of the claims is simply used to describe parts that are unitary parts with other members – "on," "provided on", a part "of."

Therefore, the term "associated with" should be construed as "connected directly to or forming a physical part of."

## IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court interpret the terms consistent with its proposed claim constructions, namely:

1. "frame side assembly" ***means*** "the generally vertical side frame members defined by items 22, 24, 26, 28, and 30" and specifically not the rocker mechanism 32, the support runner 34, and the cross members 56.

2. "associated with" ***means*** "connected directly to or forming a physical part of."

Respectfully submitted,

Dated: November 18, 2021

By: ***s/ G. Thomas Williams***

G. Thomas Williams (MI-P53734)
**MCGARRY BAIR PC**
45 Ottawa Ave. SW
Suite 700
Grand Rapids, MI 49503
Tel: (616) 742-3500
Fax: (616) 742-1010
Email: gtw@mcgarrybair.com